IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOHNNIE MITCHELL, # 305232, ) | Civil Action No. 3:06-0629-TLW-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| DAVID SANDS, PRISON INDUSTRIES ) | |
| SUPERVISOR; AND ) | |
| APPALACHIAN ENGINEERED FLOORS, ) | |
| ) | **MAGISTRATE JUDGE'S** |
| Defendants. ) | **REPORT AND RECOMMENDATION** |
| ) | |

Plaintiff, Johnnie Mitchell, filed this action on March 21, 2006.[1] He is an inmate at the Allendale Correctional Institution ("ACI") of the South Carolina Department of Corrections ("SCDC"). Defendants are David Sane ("Sane"), Prison Industries Project Supervisor for SCDC and Standard Plywoods, Inc. ("Standard Plywoods").[2] On July 21, 2006, Defendants filed a motion for summary judgment. Plaintiff, because he is proceeding pro se, was advised July 27, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on October 2, 2006.

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(d) and (e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2] Defendants provide that Plaintiff has incorrectly identified them as "David Sands" and "Appalachian Engineered Floors" in his Complaint. Defendants' Motion for Summary Judgment at 1.

DISCUSSION

Plaintiff alleges that his constitutional rights were violated because he was terminated from his Prison Industries job working at Standard Plywoods. Specifically, he claims that he was hired on June 23, 2005 by Prison Industries at the Broad River Correctional Institution ("BRCI"); on July 6, 2005, he was transferred from BRCI to ACI; on January 10, 2006, he was hired by Prison Industries at ACI; and on January 18, 2006, he was terminated from ACI Prison Industries. Complaint at 4. Plaintiff requests compensatory and punitive damages. Complaint at 5.

SCDC's Division of Industries ("DOI"), by whom Defendant Sane is employed, operates the Prison Industries project located at ACI under the provisions of S.C. Code Ann. § 24-3-310, et. seq. Defendants provide that neither Sane nor Standard Plywoods "hired" Plaintiff, and Sane never authorized Plaintiff's assignment to the project at ACI because Plaintiff did not provide a truthful response to a question asked of him on the written application form. Sane, when he first considered whether to assign Plaintiff to his project, confirmed that Plaintiff had previously participated in another SCDC DOI operated project at BRCI in which RM Design, Inc., also participates. RM Design and Standard Plywoods occasionally compete against one another in the marketplace. Senior DOI officials directed Sane to delay the assignment of any inmate to his project who had previously participated in the DOI project located at BRCI. Sane states that DOI officials have now authorized him to begin assigning inmates to the ACI project who previously participated in the BRCI project and he expected that Plaintiff would be participating in the ACI project within the next sixty days. See Sane Aff.

Defendants contend that they are entitled to summary judgment because: (1) Plaintiff has no due process rights to a prison work assignment; (2) Plaintiff has not shown any physical injuries and

2

thus cannot legitimately claim damages for mental anguish or emotional injuries and therefore fails to show a violation of his Eighth Amendment rights; (3) Plaintiff fails to articulate a viable claim of discrimination or equal protection; (4) Defendant Standard Plywoods is not subject to suit under § 1983; (5) Defendant Sane, in his individual capacity, is entitled to qualified immunity; (6) Defendant Sane, in his official capacity, is not a "person" subject to suit under § 1983; (7) the Eleventh Amendment bars Plaintiff's claims for money damages including restitution and back wages; and (8) Plaintiff has failed to exhaust his available administrative remedies.[3]

1.     State Actor

Defendant Standard Plywoods contends that it is not subject to suit under § 1983 because it did not act under color of state law. Sane states that Standard Plywoods is a private company that contracted with SCDC to build a production facility at ACI, it leases inmate labor from SCDC, and these inmates manufacture hardwood floors under the "Anderson Hardwood Floors" brand name that Standard Plywoods ultimately sells on the private market. Sane Aff., Para. 2. The company also contends that Plaintiff has introduced absolutely no evidence or even alleged that Standard Plywoods should be held liable by virtue of its interaction with a state actor. Sane

---

[3] It is recommended that Defendants' motion for summary judgment be granted on the merits, as discussed below. Alternatively, it is recommended that this action be dismissed because Plaintiff has failed to exhaust his administrative remedies.

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. Mary Coleman, Chief Administrator for SCDC's Inmate Grievance Branch, states that although Plaintiff filed a grievance (concerning the alleged incident) that was processed at Step 1, Plaintiff did not file a Step 2 grievance appeal. Coleman Aff.

states that he is the project manager of the Prison Industries project at ACI, he manages the day-to-day operation of the project including decisions regarding the assignment of inmates to the project, and Sane alone decides whether an inmate is assigned to the ACI project.  Sane Aff., Para. 2.

A person is considered to be acting under color of state law when the person abuses the position given to him by the state.  West v. Atkins, 487 U.S. 42 (1988).  "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."  United States v. Classic, 313 U.S. 299, 326 (1941).[4]  By definition, a public employee will be found to be acting under color of state law only when he is acting in his official capacity, while he is exercising his responsibilities pursuant to state law, or if he abuses the position he holds or the power it gives him, West, 487 U.S. at 50.  In Shelley v. Kraemer, 334 U.S. 1, 13 (1948), the United States Supreme Court noted that the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful."  The federal court does not have jurisdiction to hear plaintiff's cause of action where the alleged violation was committed by a private third party, unrelated to the state.

Standard Plywoods is not a public employee.  This company merely leases inmate labor from SCDC.  In West, the Supreme Court found that a private physician who is either under contract to treat patients or to whom patients are referred acts under color of state law because the state has delegated to the physician its duty to provide adequate medical care.  West, 487 U.S. at 56.  Here, though, Plaintiff has made no showing that the state has a duty to provide him with a prison job.

---

[4]Classic was decided on the basis of 18 U.S.C. § 242, which provides criminal sanctions for civil rights violations.  The Classic definition of acting "under color of state law" was adopted for § 1983 purposes in Monroe v. Pape, 365 U.S. 167, 183-184 (1961).

Standard Plywoods merely provides employment opportunities that an inmate may volunteer for if he is qualified by SCDC to do so.

    2.    <u>Due Process</u>

Plaintiff alleges that he was terminated from the Prison Industries project at ACI in violation of his due process rights. He claims that he did not receive an administrative hearing before Sane terminated him from the Prison Industries project and that "a hearing was held by classification" after Sane terminated him. Defendants contend that Plaintiff fails to show that he has due process rights as to his work assignment at ACI.

Plaintiff fails to establish a due process violation because he has not shown that he has a protected liberty or property interest in prison employment. A plaintiff has no constitutional right to participate in prison programs, so his ineligibility for prison work programs is not a deprivation of constitutional magnitude. See <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983); <u>Altizer v. Paderick</u>, 569 F.2d 812 (4th Cir.), <u>cert. denied</u>, 435 U.S. 1009 (1978)(custody classifications and work assignments are generally within the discretion of the prison administrator); <u>Gibson v. McEvers</u>, 631 F.2d 95, 98 (7th Cir. 1980)("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the Due Process Clause."); <u>Alley v. Angelone</u>, 962 F. Supp. 827, 834 (E.D.Va. 1997)(prisoner did not have a protected interest in continued employment because lack of employment was clearly within the range of confinement which could be expected by most inmates).

Further, under the analysis of liberty interests set out by the Supreme Court in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), Plaintiff fails to show that he has a liberty interest in prison employment. Termination of prison employment constitutes neither a restraint on Plaintiff's freedom "exceeding the sentence in such an unexpected manner as to give rise to protection of the Due

5

Process Clause by its own force" nor a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484.

In his opposition memorandum, Plaintiff alleges that he has a protected interest in prison employment pursuant to South Carolina Code Ann. § 24-3-430. This statute provides:

> (A) The Director of the Department of Corrections may establish a program involving the use of inmate labor by a nonprofit organization or in private industry for the manufacturing and processing of goods, wares, or merchandise or the provision of services or another business or commercial enterprise considered by the director to enhance the general welfare of South Carolina. No violent offender shall be afforded the opportunity to perform labor for nonprofit organizations if such labor is outside the confines of a correctional institution. Inmates participating in such labor shall not benefit in any manner contradictory to existing statutes.
>
> (B) The director may enter into contracts necessary to implement this program. The contractual agreements may include rental or lease agreements for state buildings or portions of them on the grounds of an institution or a facility of the Department of Corrections and provide for reasonable access to and egress from the building to establish and operate a facility.
>
> (C) An inmate may participate in the program established pursuant to this section only on a voluntary basis and only after he has been informed of the conditions of his employment.
>
> (D) No inmate participating in the program may earn less than the prevailing wage for work of similar nature in the private sector.
>
> (E) Inmate participation in the program may not result in the displacement of employed workers in the State of South Carolina and may not impair existing contracts for services.
>
> (F) Nothing contained in this section restores, in whole or in part, the civil rights of an inmate. No inmate compensated for participation in the program is considered an employee of the State.
>
> (G) No inmate who participates in a project designated by the Director of the Bureau of Justice Assistance pursuant to Public Law 90-351 is eligible for unemployment compensation upon termination from the program.
>
> (H) The earnings of an inmate authorized to work at paid employment pursuant to this section must be paid directly to the Department of Corrections and applied as provided under Section 24-3-40.

Although the Supreme Court of South Carolina has found that this statute, in certain circumstances, creates a protected interest in a prisoner receiving the prevailing wage, see Wicker v. South Carolina Dep't of Corr., 602 S.E.2d 56 (S.C. 2004), Plaintiff fails to show that the state has created a protected interest in prison employment. The statute specifically provides that the establishment of the program is discretionary and an inmate's participation in the program is voluntary. See S.C. Code Ann. § 24-3-430(A) and (C); see Skipper v. South Carolina Dep't of Corr., (distinguishing prevailing wage claims from claims of a right to prison employment and holding that an inmate of SCDC, in being terminated from his prison employment, did not suffer an infringement upon his liberty interest for due process purposes).

   3.     Eighth Amendment

Plaintiff alleges that Defendants' actions constituted cruel and unusual punishment in violation of his Eighth and Fourteenth Amendment rights.[5] Defendants contend that Plaintiff fails to show any Eighth Amendment violation because he has not shown any physical injuries.

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. First, deprivations must be objectively serious in the sense that they violate contemporary notions of

---

[5]As Plaintiff is a convicted prisoner and not a pretrial detainee, his claims are properly analyzed under the Eighth Amendment, not the Fourteenth Amendment.

7

decency. Rhodes v. Chapman, 452 U.S. 337 (1981). Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949 (1993). The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825 (1994). A plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged conditions to withstand summary judgment on a prison living conditions claim. Strickler, 989 F.2d at 1380-81.

Plaintiff fails to establish an Eighth Amendment violation because he has not shown any serious or significant physical or emotional injury resulting from Defendants' actions. Further, there is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. See Grandstaff v. City of Borger , 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987); and Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989). The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[6]

42 U.S.C. § 1997e(e).

---

[6]The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

8

4.   Fourteenth Amendment/Discrimination

Plaintiff alleges that Defendants' actions were discriminatory and violated his Equal Protection rights. Defendants contend that Plaintiff fails to state a claim because he has not alleged that Sane and/or Standard Plywoods terminated his work assignment because of his race, his age, his health, his gender, his sexual orientation, or his poverty.

An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the classification is narrowly tailored to serve a compelling governmental interest." See Plyler v. Doe, 457 U.S. 202, 216-17 (1982). When a plaintiff is not a member of a suspect class, he must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. See Turner v. Safley, 482 U.S. 78, 89 (1987). Plaintiff has not alleged that he is a member of a suspect class. He claims that he was treated differently than similarly-situated inmates because other inmates who had worked at the BRCI project were allowed to work on the ACI project. He has,

however, provided no names or other information to show that these inmates were similarly situated to him.[7]

5. <u>Immunity</u>

Defendant Sane contends that he is entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. <u>Id.</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against

---

[7]Plaintiff submitted a copy of a grievance with his memorandum in opposition to summary judgment in which he complained that he knew of inmates who had lied on their applications for employment, stating that they had not worked at BRCI when in fact they had, and were hired at ACI. In response, Sane wrote that he would investigate Plaintiff's claims and that Plaintiff should "feel free" to provide the names of the inmates in question. Plaintiff's Opposition Memorandum, Ex. H.

the state. State officials may only be sued in their individual capacities. Therefore, Defendant Sane is entitled to Eleventh Amendment immunity from monetary damages in his official capacity.

Defendant Sane also contends that he is entitled to qualified immunity in his individual capacity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendant Sane violated any of his clearly established constitutional or statutory rights. Therefore, Defendant Sane is entitled to qualified immunity in his individual capacity.

## CONCLUSION

Based upon review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 19) be granted.

                                                  Respectfully submitted,

                                                  s/Joseph R. McCrorey  
                                                  United States Magistrate Judge

January 26, 2007  
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).